IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TINA WILLIS and GARY WILLIS,        3:11-CV-430-BR

       Plaintiffs,

                          OPINION AND ORDER

v.

NATIONWIDE DEBT SETTLEMENT
GROUP, an Arizona Limited
Liability Company; GLOBAL
CLIENT SOLUTIONS, LLC, an
Oklahoma Limited Liability
Company; and DEBT CARE USA,

       Defendants.


JOSHUA L. ROSS
STEVE D. LARSON
Stoll Stoll Berne Lokting & Shlachter, PC
209 S.W. Oak Street, Fifth Floor
Portland, OR 97204
(503) 227-1600

       Attorneys for Plaintiffs

GEORGE J. COOPER, III
Dunn Carney Allen Higgins & Tongue, LLP
851 S.W. Sixth Avenue, Suite 1500
Portland, OR 97204-1357
(503) 224-6440


1 - OPINION AND ORDER

**RICHARD W. EPSTEIN**
**REBECCA BRATTER**
Greenspoon Marder, P.A.
100 West Cypress Creek Road, Suite 700
Fort Lauderdale, FL 33309
(954) 491-1120

      Attorneys for Defendant Global Client Solutions, LLC

**ROBERT B. MILLER**
Kilmer Voorhees & Laurick, PC
732 N.W. 19th Avenue
Portland, OR 97209
(503) 224-0055

      Attorneys for Defendant Debt Care USA

**BROWN, Judge.**

    This matter comes before the Court on the Court's continued consideration of Defendant Debt Care USA's Motion (#22) to Compel Arbitration and Defendant Global Client Solutions' Motion (#31) to Compel Arbitration or to Dismiss.  On January 30, 2012, the Court heard argument on the parties' Objections to two Findings and Recommendation (#54, #55) issued by Magistrate Judge Janice M. Stewart, at which time the Court assumed direct responsibility for this action and the disposition of Defendants' pending Motions to Compel and/or to Dismiss (#18, #22, #31).

    On January 31, 2012, the Court issued an Order (#70) in which the Court denied as premature those portions of Defendants' Motions (#18, #31) seeking to dismiss Plaintiffs' Complaint and granted Defendants leave to renew those arguments at a later date.  The Court took under advisement those portions of both

2 - OPINION AND ORDER

Motions (#22, #31) that require resolution of Plaintiffs'
contention that any arbitration provision at issue in this case
is unenforceable due to procedural and substantive
unconscionability.  The Court deferred the remaining issues
raised in Defendants' Motions (#22, #31) to Compel Arbitration
pending further discovery.

For the reasons that follow, the Court **GRANTS in part**
Defendants' Motions (#22, #31) to Compel Arbitration to the
extent that the Court concludes the arbitration agreements at
issue here are enforceable with the following modifications:

(1) The Court severs as unenforceable the forum-selection
clauses in the Nationwide Service Agreement and the Global
Agreement and replaces them with the requirement that arbitration
must occur within the District of Oregon, and

(2) The Court strikes as unenforceable those portions of the
Limitation of Liability provision in the Global Agreement that
preclude recovery for punitive damages and that limit Global's
liability to the amount of the fees that Plaintiffs paid to
Global.

## FACTUAL BACKGROUND[1]

As of early 2010 Plaintiffs had accumulated substantial unsecured debts and had difficulty satisfying those debts due to their financial circumstances.  Plaintiffs found Defendant Nationwide's website advertising a debt-negotiation service and spoke to a Nationwide representative by telephone.  Nationwide sent marketing materials to Plaintiffs by email that represented Nationwide and Debt Care would negotiate agreements with creditors to satisfy debts for amounts less than were owed.

According to Plaintiffs, Nationwide encouraged its customers to stop paying their unsecured creditors and to authorize Nationwide to negotiate those debts on the consumer's behalf.  In Nationwide's program, a consumer contributes monthly payments into a dedicated account called a Special Purpose Account (SPA) that is administered by Global.  Nationwide then works with consumers to establish a monthly payment to be made to a consumer's SPA based on the consumer's particular circumstances. The funds paid to the SPA would be used to negotiate and to settle outstanding debts.

On or about January 19, 2010, Plaintiffs received a six-page packet from Nationwide, including Nationwide's Debt Negotiation

---

[1] This factual summary is provided as context for the pending Motions only.  The Court is mindful that the parties assert there are numerous factual disputes, some of which will be tried to the Court in a separate proceeding and about which the Court has not drawn any conclusions.

Program Services Agreement (Nationwide Service Agreement), which contained the following arbitration provision:

> **8. Binding Arbitration**:  Client agrees that any claim or dispute by either Client or Nationwide Debt Settlement Group against the other, or against employees, agents, officers of the other arising from or relating in any way to this Agreement, shall be resolved by binding arbitration.  All parties agree that the American Arbitration Association ("AAA") under the code of Procedure shall conduct the arbitration in effect at the time the claim is filed.  If the AAA is unable, or unwilling to act as an arbitrator, another independent arbitration organization shall be substituted.  **Client understands that the results of this arbitration clause is that claims cannot be litigated in court, including claims that could have been tried before a jury as class actions or as private attorney general civil actions.**  Client expressly waives any right of entitlement to file any claim against Nationwide Debt Settlement Group as a class action.  The location of any arbitration shall be in San Joaquin County, California.  In the event of any arbitration proceeding arising out of, or relating to this Agreement, the Client's responsibility for the costs of the processing will be limited to $1,000.00.

Emphasis in original.

The Nationwide Service Agreement requires Plaintiffs to establish an SPA with Global.  Attached to the Nationwide Service Agreement was a document titled Payment of Fees to Nationwide Debt Settlement Group that requires Plaintiffs to contribute a set amount each month into an SPA to pay toward settlement of their debts.  The packet also included Global's Special Purpose Account Application (Global Account Application), which does not

5 - OPINION AND ORDER

contain an arbitration clause.  The same day that Plaintiffs received the packet, they electronically signed the Global Account Application

On or about January 21, 2010, Plaintiffs received an email from Debt Care to notify them that they had been approved for Debt Care's settlement program.  At some point soon thereafter, Plaintiffs received a six-page "welcome packet" from Debt Care.

On or soon after January 26, 2010, Plaintiffs received a "welcome letter" from Global dated January 26, 2010, to advise Plaintiffs that Global was "the processor for all activity related to your new [SPA]."  The letter also included a copy of the Account Agreement and Disclosure Statement (Global Agreement) which "lists all applicable fees" and "discloses the rules and regulations of your account."  Among the rules and regulations in the two-page Global Agreement are the following clauses regarding "Arbitration and Application of Law" and "Limitation of Liability" that Global seeks to enforce:

> **Arbitration and Application of Law:**  In the event of a dispute or claim relating in any way to this Agreement or our services you agree that such dispute shall be resolved by binding arbitration in Tulsa, Oklahoma utilizing a qualified independent arbitrator of Global's choosing.  The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.

> **Limitation of Liability:**  Under no circumstances shall Global or the Bank ever be liable for any special, incidental,

6 - OPINION AND ORDER

> consequential, exemplary or punitive damages.
> IN NO EVENT SHALL THE LIABILITY OF GLOBAL OR
> THE BANK UNDER THIS AGREEMENT EXCEED THE
> AMOUNT OF FEES YOU HAVE PAID UNDER THIS
> AGREEMENT.

In February 2010 Plaintiffs began depositing approximately $1,150 each month into their SPA and had deposited a total of more than $10,000 by October 7, 2010.  Defendants successfully negotiated at least one debt reduction on behalf of Plaintiffs. Defendants withdrew fees each time Plaintiffs deposited money into their SPA regardless whether they had successfully settled any debts.

## PROCEDURAL BACKGROUND

On April 5, 2011, Plaintiffs filed their class-action Complaint against Defendants on behalf of themselves and others similarly situated for Defendants' alleged violations of federal and state laws that regulate businesses providing "debt negotiation" services.  Plaintiffs allege Defendants have committed numerous violations of Oregon's Debt Management Services Providers (DMSP) law, Oregon Revised Statutes §§ 697.602 - 697.842; the federal Credit Repair Organizations Act (CROA), 15 U.S.C. §§ 1679 - 1679j; and Oregon's Unlawful Trade Practices Act (UTPA), Oregon Revised Statutes §§ 646.605 - 646.638.

Nationwide has not filed any appearance in this matter.

On June 17, 2011, Global filed its Motion (#18) to Dismiss based on the lack of personal jurisdiction, failure to state a claim for relief, and unconstitutionality of the Oregon DMSP as applied to Global and, in the alternative, its Motion (#22) to Compel Arbitration.

On July 29, 2011, Debt Care filed its Motion (#31) to Compel Arbitration or Motion to Dismiss. Debt Care moves to compel arbitration of Plaintiffs' First and Third Claims alleging violations of the Oregon DMSP and UTPA based on an agreement to arbitrate any dispute in San Joaquin County, California, and to waive any class-action claim. In the alternative, Debt Care moves to dismiss based on improper venue and failure to state a claim.

As noted, the Court issued an Order (#70) on January 31, 2012, in which the Court denied as premature but with leave to renew those portions of Defendants' Motions (#18, #31) seeking to dismiss Plaintiffs' Complaint. The Court took under advisement those portions of both Motions (#22, #31) that require resolution of Plaintiffs' contentions that any arbitration provision is unenforceable due to procedural and substantive unconscionability and otherwise deferred Defendants' Motions (#22, #31) to Compel Arbitration pending further discovery.

<u>STANDARDS</u>

The Federal Arbitration Act (FAA) was enacted to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Id.  See also* 9 U.S.C. § 2.  The court must "rigorously enforce" arbitration agreements and "must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)(citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)).  As the Supreme Court recently held in *AT&T Mobility, Inc. v. Concepcion*:

> We have described this provision as reflecting both a "liberal federal policy favoring arbitration," *Moses H. Cone, supra*, at 24, 103 S. Ct. 927, and the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. ____, ____, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010).  In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), and enforce them according to their terms, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed.2d 488 (1989).

131 S. Ct. 1740, 1745-46 (2011).

Accordingly, a court's task on a motion to compel

arbitration is to "determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden*, 512 F.3d at 1217 (citation omitted). *See also Simula*, 175 F.3d at 720.

When grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce arbitration agreements. 9 U.S.C. § 2. *See also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683 (1996); *Ferguson v. Countrywide Cred. Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). As the Ninth Circuit recently held: "The [Supreme] Court reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as the doctrines are not 'applied in a fashion that disfavors arbitration.'" *Kilgore v. Key Bank Nat'l Ass'n*, No. 09-16703, slip op. 2627, 2654 (9th Cir. March 7, 2012)(quoting *Conception*, 131 S. Ct. at 1747).

To evaluate the validity of an arbitration agreement, "federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)(quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). *See also Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)(federal courts must apply the law of the forum state to determine whether an arbitration agreement is enforceable).

"The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007)(citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975)). Whether a contract is unconscionable is a "question of law that must be determined based on the facts in existence at the time the contract was made." *Motsinger*, 211 Or. App. at 614. The determination as to whether a free-standing arbitration agreement is unconscionable is for the court to determine. *See Jackson v. Rent-A-Center West, Inc.*, 581 F.3d 912, 916 (9th Cir. 2005).

"In Oregon, the test for unconscionability has two components--procedural and substantive." *Motsinger*, 211 Or. App. at 614 (citing *Vasquez-Lopez*, 210 Or. App. at 556). "Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract." *Id.* (citation omitted; emphasis in original). "Although both forms of unconscionability are relevant, . . . only substantive unconscionability is absolutely necessary." *Chalk*, 560 F.3d at 1093 (quoting *Vasquez-Lopez*, 210 Or. App. at 567)(quotation omitted).

"Procedural unconscionability refers to the *conditions* of contract formation." *Motsinger*, 211 Or. App. at 614 (emphasis in original). The inquiry into procedural unconscionability focuses

11 - OPINION AND ORDER

in part on the factor of oppression.

> Oppression arises when there is inequality in
> bargaining power between the parties to a
> contract, resulting in no real opportunity to
> negotiate the terms of the contract and the
> absence of meaningful choice.

*Id.* "[A] contract of adhesion--an agreement presented on a take-it-or-leave-it basis--reflects unequal bargaining power. . . ." *Chalk*, 560 F.3d at 1094 (citing *Motsinger*, 211 Or. App. at 615). In *Motsinger*, however, the Oregon Court of Appeals held unequal bargaining power is insufficient to invalidate an arbitration clause without some evidence of deception, compulsion, or unfair surprise.  *Id.* at 615-17.


<u>DISCUSSION</u>

Plaintiffs contend the arbitration agreements that Defendants seek to enforce are both procedurally and substantively unconscionable.

**I.    Debt Care's Motion (#22) to Compel Arbitration.**

Debt Care maintains the Nationwide Service Agreement arbitration provision is enforceable and urges the Court to compel arbitration of Plaintiffs' claims against Debt Care pursuant to that provision.[2]  Notwithstanding the parties'

---

[2] In its original Motion, Debt Care sought only to compel arbitration of Plaintiffs' First and Third Claims because the Ninth Circuit had held that CROA claims were not subject to arbitration.  While the parties were briefing Objections to the Magistrate Judge's Findings and Recommendation, however, the

dispute concerning whether Debt Care may enforce the arbitration provision in the Nationwide Service Agreement as an agent of Nationwide, Plaintiffs also contend the arbitration clause in that Agreement is unenforceable because it is unconscionable.  To resolve the issue of enforceability of this arbitration provision, the Court assumes without deciding that Debt Care may invoke this portion of the Nationwide Service Agreement.

**A.   Procedural Unconscionability.**

Plaintiffs contend the arbitration clause is procedurally unconscionable because the arbitration clause was part of a contract of adhesion and the arbitration clause is the product of deception, compulsion, and surprise.

**1.   Adhesion Contract.**

Plaintiffs maintain the Nationwide Service Agreement arbitration provision is a contract of adhesion; *i.e.*, a "take-it-or-leave-it" bargain that reflects the unequal bargaining power between the parties.  The Court notes Plaintiffs sought out debt-consolidation services on the internet and selected Defendants' services form the marketplace.  Although Plaintiffs were consumers to whom Defendants hoped to provide a service,

---

Supreme Court issued its opinion in *CompuCredit Corp. v. Greenwood,* 132 S. Ct. 665 (2012), in which it reversed the Ninth Circuit and held CROA claims are arbitrable.  *Id.* at 669-72. Accordingly, to the extent the arbitration provision is enforceable, the Court concludes it applies with equal force to Plaintiffs' CROA claim.

Plaintiffs retained the power to choose a different provider of those services if they id not wish to accept Defendants' terms. Even though the Nationwide Service Agreement appears to be a pre-printed, "take-it-or-leave-it" format drafted by Nationwide and likely not subject to negotiation, it is difficult for the Court to conclude that Plaintiffs did not have any bargaining power in this transaction because, as noted, there were other providers of the debt-consolidation services with whom Plaintiffs could have chosen to contract.

In any event, the Ninth Circuit made clear in *Chalk v. T-Mobile USA, Inc.*, that "the take-it-or-leave-it nature of [a contract] is insufficient to render it unenforceable" on the basis of procedural unconscion- ability when the arbitration clause "was not hidden or disguised and where the plaintiff was given time to read the documents before assenting to their terms." 560 F.3d 1087, 1094 (9th Cir. 2009)(citation omitted). The arbitration provision in the Nationwide Services Agreement is conspicuously placed on the first page and the operative language warning Plaintiffs that they were giving up their rights to litigate disputes in court is in bold text. In addition, Nationwide emailed the relevant Agreement to Plaintiffs for their consideration, and, therefore, Plaintiffs had control of the time and conditions under which they could consider Nationwide's terms. Thus, in these circumstances, Plaintiffs must show

14 - OPINION AND ORDER

additional procedural unfairness to render this arbitration provision unconscionable.

### 2. Deception, Compulsion, and Surprise.

Plaintiffs also contend the effort by Debt Care to enforce the arbitration clause in the Nationwide Service Agreement despite the fact that Debt Care was not a party to and is not named in that Agreement demonstrates they suffered deception and surprise sufficient to render the arbitration clause unconscionable.

The Court notes this arbitration clause states the provision applies with respect to "any claim or dispute by either Client or Nationwide Debt Settlement Group against the other, or against employees, *agents*, officers of the other arising from or relating in any way to this Agreement, shall be resolved by binding arbitration."  (Emphasis added.)  Thus, the Agreement clearly provides notice that claims relating to the Agreement against Nationwide's agents would also be subject to arbitration. In any event, such provisions are not a basis for finding "unfair surprise" in circumstances like these because these provisions were not hidden from Plaintiffs and were apparent from the face of the Agreement that Plaintiffs' admittedly considered and signed.  *See Motsinger*, 211 Or. App. at 614, 616-17 ("A party is presumed to be familiar with the contents of any document that bears the person's signature.").  Although the Court has yet to

resolve the parties' separate dispute as to whether Debt Care was an agent of Nationwide, the Court does not find anything deceptive or surprising about the application of the arbitration clause to claims against Nationwide's agents nor any basis to conclude that Plaintiffs were surprised by this term under the circumstances.  As the record reflects, Plaintiffs dealt with both Nationwide and Debt Care directly and concurrently during their enrollment for Defendants' services.

Accordingly, even if the arbitration clause's adhesive character is presumed and did, in fact, reflect unequal bargaining power, that finding alone is insufficient on this record to render the provision unenforceable.  *See Chalk*, 560 F.3d at 1094 (citation omitted).

**B.    Substantive Unconscionability.**

Plaintiffs also contend the arbitration clause is substantively unconscionable because the class-action waiver in the arbitration clause renders potential plaintiffs unable to vindicate their statutory rights effectively and the forum-selection provision requiring the location of any arbitration to be in San Joaquin County, California, is unfair and is contrary to Oregon public policy.

When evaluating unconscionability under Oregon law, "the emphasis is clearly on substantive unconscionability." *Vasquez-Lopez*, 210 Or. App. at 569. *See also Gilmer v. Interstate/*

*Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).  The Court must, therefore, determine whether this arbitration clause is substantively unconscionable.

### 1.  Class-Action Waiver.

Plaintiffs insist this arbitration provision is unenforceable because the waiver of class-action claims renders Plaintiffs and others similarly situated unable to vindicate their statutory rights.  Plaintiffs argue generally that each arbitration provision must be viewed in its own context, *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 567 (2007), and that statutory claims are arbitrable only insofar as they are vindicable in the arbitral forum, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). Specifically, Plaintiffs contend the class-action waiver renders this arbitration clause unconscionable under Oregon law because Plaintiffs and others similarly situated will not be able to vindicate their statutory rights due to small-dollar damage claims that, as a practical matter, would prevent parties from bringing such claims on an individual basis (citing evidence in the record that individual litigants would have difficulty finding needed representation to prosecute such claims).  *See Vasquez-Lopez,* 210 Or. App. at 570-72.

As Debt Care points out, however, the Supreme Court in *Conception* recently and directly addressed the issue of class-

17 - OPINION AND ORDER

action waivers in arbitration provisions when it held the FAA

preempts a California common-law rule mandating the availability

of class arbitration when small amounts of damages and large

numbers of potential claimants make claims otherwise unlikely to

be pursued:

> Although § 2's saving clause preserves
> generally applicable contract defenses,
> nothing in it suggests an intent to preserve
> state-law rules that stand as an obstacle to
> the accomplishment of the FAA's objectives.
> As we have said, a federal statute's saving
> clause "'cannot in reason be construed as
> [allowing] a common law right, the continued
> existence of which would be absolutely
> inconsistent with the provisions of the act.
> In other words, the act cannot be held to
> destroy itself.'" *American Telephone &
> Telegraph Co. v. Central Office Telephone,
> Inc.*, 524 U.S. 214, 227-228, 118 S. Ct. 1956,
> 141 L. Ed. 2d 222 (1998) (quoting *Texas &
> Pacific R. Co. v. Abilene Cotton Oil Co.*, 204
> U.S. 426, 446, 27 S. Ct. 350, 51 L. Ed. 553
> (1907)).

131 S. Ct. at 1748 (internal citation omitted).  Thus, although

Plaintiffs correctly point out that *Concepcion* maintains the

savings clause for purposes of an unconscionability analysis of

arbitration provisions under state law, the Supreme Court

directly rejected Plaintiffs' argument with respect to preserving

class actions in situations where the potential numbers of

litigants is large but the damage amounts are low.  *Id.* at 1752-

53 ("States cannot require a procedure that is inconsistent with

the FAA, even if it is desirable for unrelated reasons.").

Plaintiffs seek to distinguish this case from

18 - OPINION AND ORDER

*Concepcion* and argue Oregon law requires case-by-case review in this context whereas *Conception* dealt with California's more categorical common-law rule.  Plaintiffs also contend they have demonstrated this particular arbitration clause's unconscionability.

The Court, however, notes the Oregon and California rules have the same effect:  They render arbitration clauses unconscionable in circumstances where the large number of litigants and the low-dollar value of claims would make litigation of such claims individually impractical or unlikely. *See Chalk*, 560 F.3d at 1095 (comparing the Oregon rule in *Vasquez-Lopez* that "class action waiver in a contract where individual damages are likely to be small is substantively unconscionable" to the rules by the Supreme Courts of Washington and California).  Moreover, as the Ninth Circuit recently emphasized in *Coneff v. AT&T Corporation*, No. 09-35563, 2012 WL 887598, at *2 (9th Cir. Mar. 16, 2012), "*Concepcion* is broadly written."  In *Coneff,* the Ninth Circuit addressed at length arguments nearly identical to those advanced by Plaintiffs in the context of the Washington Supreme Court rule:

> Plaintiffs argue that Concepcion is distinguishable.  None of their arguments is persuasive.
>
> First, Plaintiffs argue that Supreme Court precedents require arbitration of statutory rights only if a prospective litigant "'effectively may vindicate'" those

19 - OPINION AND ORDER

rights in the arbitral forum. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513, 148 L. Ed.2d 373 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). As Plaintiffs note, the Supreme Court in *Green Tree* went on to observe that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* Plaintiffs cite *Green Tree* and other similarly reasoned decisions as being in tension with *Concepcion*. They argue that this tension must be resolved by reading an implied exception into *Concepcion*; specifically, they suggest that *Concepcion*'s rule permits state law to invalidate class-action waivers when such waivers preclude effective vindication of statutory rights.

We do not read *Concepcion* to be inconsistent with *Green Tree* and similar cases. Although Plaintiffs argue that the claims at issue in this case cannot be vindicated effectively because they are worth much less than the cost of litigating them, the *Concepcion* majority rejected that premise.

* * *

The dissent in *Concepcion* focused on a related but different concern—even if the arbitration agreements guaranteed (via fee-shifting provisions) that complaining customers would be made whole with respect to damages and counsel fees, most customers would not bother filing claims because the amounts are too small to be worth the trouble. *See* 131 S. Ct. at 1761 (Breyer, J., dissenting)(observing that small-value claims will not be made, for example, when they involve "waiting at great length while a call

is placed on hold"). That is, the concern is
not so much that customers have no effective
means to vindicate their rights, but rather
that customers have insufficient incentive to
do so. That concern is, of course, a primary
policy rationale for class actions, as
discussed by the district court in terms of
deterrence. *Coneff v. AT & T Corp.*, 620 F.
Supp. 2d 1248, 1259 (W.D. Wash. 2009). But
as the Supreme Court stated in *Concepcion*,
such unrelated policy concerns, however
worthwhile, cannot undermine the FAA. 131
S. Ct. at 1753.

Even if we could not square *Concepcion*
with previous Supreme Court decisions, we
would remain bound by Concepcion, which more
directly and more recently addresses the
issue on appeal in this case. Cf. Rodriguez
de Quijas v. Shearson/Am. Express, Inc., 490
U.S. 477, 484, 109 S. Ct. 1917, 104 L. Ed. 2d
526 (1989)("If a precedent of this Court has
direct application in a case, yet appears to
rest on reasons rejected in some other line
of decisions, the Court of Appeals should
follow the case which directly controls,
leaving to this Court the prerogative of
overruling its own decisions.").

\* \* \*

Undaunted, Plaintiffs argue that
class-action waivers are unconscionable under
Washington law only on a case-by-case,
evidence-specific finding of exculpation.
Essentially, Plaintiffs argue that *Concepcion*
would not apply to a sufficiently narrow,
fact-based state-law rule for voiding
class-action waivers.

*Concepcion*, particularly the section
responding to the dissent, forecloses this
argument. 131 S. Ct. at 1753. The Eleventh
Circuit agrees. *See Cruz*, 648 F.3d at 1214
(acknowledging a factual record regarding the
cost-effectiveness of individual pursuit of
claims, but concluding that such evidence
"goes only to substantiating the very public

> policy arguments that were expressly rejected
> by the Supreme Court in *Concepcion*—namely,
> that the class action waiver will be
> exculpatory, because most of these
> small-value claims will go undetected and
> unprosecuted").

*Id.*, at *2-4 (footnotes omitted).

Similarly, Plaintiffs' arguments about the class-action

waiver in this case are foreclosed by *Concepcion* as interpreted

in *Coneff*. Because this record reflects a waiver for services

that appears on the first page of a two-page agreement, is

referenced in bold type in a paragraph set off in bold, and does

not otherwise limit claims brought by putative plaintiffs, the

Court concludes the arbitration agreement at issue is not

unconscionable because it includes a class-action waiver.

## 2.    Forum-Selection Provision.

Plaintiffs also contend the forum-selection provision

in the Nationwide Service Agreement arbitration clause requiring

arbitration in San Joaquin County, California, is unfair and

renders the arbitration clause unconscionable.  Specifically,

Plaintiffs declare they are not financially able to travel to San

Joaquin County, California, to arbitrate this dispute, and, in

any event, the forum-selection provision is against Oregon

policy.

Debt Care has demonstrated its willingness to amend the

arbitration provision to exclude the forum-selection provision,

but Debt Care maintains the provision is not unconscionable.  In

22 - OPINION AND ORDER

the alternative, Debt Care contends the Court may sever the forum-selection provision and enforce the remainder of the arbitration clause.

Plaintiffs, in turn, maintain Debt Care's willingness to amend the arbitration clause at this stage should not affect the Court's unconscionability analysis, which must be "based on the facts as they existed at the time the contract was formed." *Sprague v. Quality Restaurants Northwest, Inc.*, 213 Or. App. 521, 525 (2007).

In *Arguenta v. Banco Mexicano, S.A.*, the Ninth Circuit set out the standards for enforceability of forum-selection clauses in federal cases:

> Federal law governs the validity of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The enforceability of forum selection clauses in international agreements is controlled by the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). In Bremen, the Court first held that forum selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is "'unreasonable' under the circumstances." 407 U.S. at 10, 92 S. Ct. at 1913. The Supreme Court has construed this exception narrowly. A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, *Carnival Cruise Lines*, 499 U.S. at 591, 111 S. Ct. at 1526; *Bremen*, 407 U.S. at 12-13, 92 S. Ct. at 1914; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical

> purposes be deprived of its day in court,"
> *Bremen*, 407 U.S. at 18, 92 S. Ct. at 1917; or
> (3) enforcement of the clause would
> contravene a strong public policy of the
> forum in which the suit is brought.  *Id*. at
> 15, 92 S. Ct. at 1916.  To establish the
> unreasonableness of a forum selection clause,
> Appellants have the "heavy burden of showing
> that trial in the chosen forum would be so
> difficult and inconvenient that the party
> would effectively be denied a meaningful day
> in court."  *Pelleport*, 741 F.2d at 281
> (citing Bremen, 407 U.S. at 18, 92 S. Ct. at
> 1917).

87 F.3d 320, 324-25 (9th Cir. 1996).

According to Plaintiffs, each of the three conditions

for finding a forum-selection clause unenforceable is present

here.  In particular, Plaintiffs point to the Declaration of Tina

Willis in which she describes Plaintiffs as incapable of paying

for the costs attendant to arbitration in San Joaquin County,

California.  Plaintiffs also point to Oregon Revised Statute §

81.150(2), which provides:

> A consumer may revoke a provision in a consumer
> contract that requires the consumer to assert a claim
> against the other party to the contract, or respond to
> a claim by the other party to the contract, in a forum
> that is not in this state.  If the provision requires
> arbitration in a forum that is not in this state, the
> sole effect of a revocation under this section is that
> any evidentiary hearing, oral argument or other
> proceeding that requires or allows attendance by the
> consumer must be conducted in this state.

Plaintiffs, therefore, contend the forum-selection provision

was against Oregon public policy at the time that Plaintiffs

entered into the Nationwide Service Agreement, and

Plaintiffs urge the Court to find the arbitration clause as

a whole is unconscionable and, therefore, unenforceable.

It is fair to conclude on this record that Plaintiffs are not capable of paying for and participating in arbitration in San Joaquin County, California, and, therefore, that enforcement of the forum-selection provision would effectively deny Plaintiffs of a meaningful day in court.  In addition, the Court finds this forum-selection provision was against the strong public policy in Oregon against enforcement of forum-selection provisions requiring consumers to assert claims relating to consumer contracts in another forum.  *See* Or. Rev. Stat. § 81.150(2).  Accordingly, the Court concludes the forum-selection provision in the arbitration clause requiring arbitration in San Joaquin County, California, is not enforceable.  *See Arguenta*, 87 F.3d at 324-25.

Because this forum-selection provision is unenforceable, the Court still must determine whether it may be severed and the remainder of the arbitration clause may be enforced or whether the arbitration clause is so "permeated by unconscionability" as to render the whole of the clause unenforceable.  *See Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 875-76 (D. Or. 2002).  *See also Vasquez-Lopez*, 210 Or. App. at 576-77.  The Court does not see any basis in this record to conclude this arbitration clause is permeated by unconscionability.  In accordance with Oregon law and public

25 - OPINION AND ORDER

policy as reflected in Oregon Revised Statute § 81.150, the Court concludes, in the exercise of its discretion, that it may sever the forum-selection provision from the arbitration clause and require arbitration in Oregon while enforcing the remainder of the clause. *See Vasquez-Lopez*, 210 Or. App. at 576-77.

For these reasons, the Court concludes the arbitration provision in the Nationwide Service Agreement is not unenforceable due to procedural and substantive unconscionability when the forum-selection clause is modified by the Court to require arbitration within Oregon.

To this extent, therefore, the Court grants in part Debt Care's Motion (#22) to Compel Arbitration.

## II.  Global's Motion (#31) to Compel.

Global also moves to compel arbitration of Plaintiffs' claims, and Plaintiffs oppose the Motion on many of the same grounds as they advanced in opposition to Debt Care's Motion. The Court notes it has yet to resolve the factual dispute as to the formation of any agreement to arbitrate between Plaintiffs and Global based on, *inter alia*, the fact that the application form Plaintiffs signed to apply for the SPA did not contain an arbitration provision. Nevertheless, in order to determine the enforceability of the provision at issue for purposes of this Motion, the Court assumes without deciding that the parties formed an agreement to arbitrate.

26 - OPINION AND ORDER

A.   **Procedural Unconscionability.**

Plaintiffs contend the arbitration clause in the Global Agreement is procedurally unconscionable because it is a contract of adhesion that reflects unequal bargaining power between the parties and it is the product of deception, compulsion, and surprise.

   1.   **Adhesion Contract.**

Plaintiffs assert their contract with Global was also a "take-it-or-leave-it" bargain that reflects substantial inequality of bargaining power between the parties.

Global points out that the terms of the Global Agreement were sent to Plaintiffs after their application for the SPA, and Plaintiffs had roughly two weeks to review the terms of the two-page Global Agreement before Plaintiffs began making deposits into their SPA in early February 2010.  Although Plaintiffs maintain they did not have an opportunity to negotiate the terms of the Global Agreement, Global contends Plaintiffs did not make any inquiry about the terms of the arbitration provision, did not attempt to negotiate any terms, and did not exercise their right to cancel the agreement after reviewing the terms.

As noted, "the take-it-or-leave-it nature of [a contract] is insufficient to render it unenforceable" on the basis of procedural unconscionability when the arbitration clause

27 - OPINION AND ORDER

"was not hidden or disguised and where the plaintiff was given
time to read the documents before assenting to their terms."
*Chalk*, 560 F.3d at 1094 (citation omitted).

As with the Nationwide Service Agreement, even if the
Global Agreement is a contract of adhesion, that alone is
insufficient to establish unconscionability and, in these
circumstances, the record does not reflect any significant
inequality of bargaining power between the parties.  As consumers
who selected the debt-resolution service by Defendants from among
many in the marketplace, Plaintiffs could have elected to do
business with another service if they found Global's terms to be
too onerous.  But even if such inequality is presumed, the Court
notes this arbitration provision is a part of a two-page
agreement and appears on page two of the Global Agreement under
the bolded heading "Arbitration and Application of Law."  The
provision is not hidden or made less conspicuous than any other
term of the agreement.  In addition, Plaintiffs had time to
consider its terms and, at a minimum, had an opportunity to
cancel the Agreement before acting.  In any event, as noted, to
the extent the Global Agreement is a contract of adhesion, there
must be additional procedural unfairness to render it
unconscionable on that basis.


2.   **Deception, Compulsion, and Surprise.**

28 - OPINION AND ORDER

Plaintiffs likewise contend this arbitration provision is the product of deception, compulsion, and surprise because, in effect, they were mandated, as a part of the debt-resolution program offered by Defendants, to establish their SPA with Global. Such a "mandate," however, does not render the Global Agreement any more "compelled" than the Nationwide Services Agreement. As noted, Plaintiffs selected Defendants' services from among those available in the marketplace and could have elected to obtain those services from another company. Global provided Plaintiffs with the terms of the agreement, gave them an opportunity to consider those terms, and gave Plaintiffs the express opportunity to "terminate this Agreement and close [their] account at any time by sending a written notice to Global Customer Service." Thus, Plaintiffs misplace reliance on *Twilleager v. RDO Vermeer, LLC*, in which an employee was forced to sign an acknowledgment agreeing to the terms of a 52-page employee handbook containing an arbitration provision as a condition of maintaining his employment. Civ. No. 10-1167-AC, 2011 WL 1637469, at *6-7 (D. Or. Apr. 1, 2011). On this record, the Court does not find any basis to conclude the Global Agreement was the result of compulsion.

Plaintiffs also contend the Global Agreement was the product of Global's deception. Here Plaintiffs point to the factual issue that is set for trial; namely, whether the initial

SPA Application that Plaintiffs signed was actually a contract for services rather than a SPA application that would be reviewed by Global for approval or denial.  Plaintiffs note the SPA Application does not contain references to mandatory arbitration and that those terms were only provided to Plaintiffs several days after Plaintiffs had agreed to open a SPA with Global. Global, in turn, characterizes the SPA Application as just that – an application – and asserts the Global Agreement is the governing contract between the parties.  Because the question whether the parties actually formed an agreement to arbitrate will be resolved at trial, the Court need not resolve this dispute here.  Instead the Court will determine whether the Global Agreement would be enforceable if the Court finds the parties actually formed such an agreement.

Plaintiffs cite *Vasquez-Lopez* to support their position that Global's "deception" renders the arbitration clause unenforceable.  210 Or. App. at 567-69.  The Oregon Court of Appeals found the arbitration agreement unconscionable in *Vasquez-Lopez* because it was written in a language the plaintiffs did not understand and the defendant had misled the plaintiffs into believing the arbitration provision would not prevent them from taking any disputes to court.  *Id*.  Here the record does not reflect any such deception with respect to the arbitration clause.

30 - OPINION AND ORDER

Finally, Plaintiffs contend the arbitration clause in the Global Agreement is the product of unfair surprise. Again, Plaintiffs rely on the contract-formation issue and characterize the SPA Application as the agreement between the parties and the Global Agreement as a set of subsequent terms to which Plaintiffs did not agree. Thus, Plaintiffs contend "[b]ecause there is no agreement to arbitrate, an arbitration clause contained in a document provided after the agreement is formed certainly acts as a surprise." Of course, if Plaintiffs succeed on that point at trial, then the arbitration clause in the Global Agreement can not be enforced against Plaintiffs. Again, for purposes of resolving this part of Defendant's Motion to Compel Arbitration, the Court assumes the parties formed the agreement to arbitrate.

The Court notes the remainder of Plaintiffs' arguments focus on the context and the appearance of the arbitration clause in the Global Agreement, which Plaintiffs maintain is hidden among "a prolix printed form" drafted by Global. This arbitration clause, however, is set out in plain language in a separate paragraph marked in bold as a part of a two-page agreement that Plaintiffs were permitted to review for several days before committing funds to their SPA. In addition, the arbitration clause is set out contextually among the other provisions in the Global Agreement pertaining to disputes between the parties, governing law, and limitations on liability and,

31 - OPINION AND ORDER

therefore, does not appear to be "hidden" in the Agreement.

Accordingly, the Court does not find evidence of procedural unconscionability on this record sufficient to conclude the arbitration clause in the Global Agreement is not enforceable. Because these arguments are, nevertheless, relevant to the fairness of the terms of the Agreement as a whole, the Court will consider them when evaluating Plaintiffs' arguments about the substantive unconscionability of this arbitration provision.

**B.    Substantive Unconscionability.**

Plaintiffs also contend the arbitration clause is substantively unconscionable because the forum-selection provision requiring the location of any arbitration to take place in Tulsa, Oklahoma, is unfair and is contrary to Oregon public policy; the unilateral right to select an arbitrator unreasonably favors Global; the costs of arbitration will unreasonably burden Plaintiffs; and the limitations on damages and remedies unreasonably favor Global.

**1.    Forum-Selection Provision.**

For the same reason the Court concluded the forum-selection provision in the Nationwide Services Agreement unenforceable, the court likewise finds the forum-selection provision in the Global Agreement mandating arbitration in Tulsa, Oklahoma, is unconscionable. As noted, to determine whether that

32 - OPINION AND ORDER

provision is severable or whether the entire arbitration clause is unenforceable, the Court must assess whether the arbitration clause is so "permeated by unconscionability" as to prevent enforcement.  346 F. Supp. 2d at 876.

### 2.   Unilateral Right to Select an Arbitrator.

As noted, the arbitration clause in the Global Agreement gives Global the right to utilize "a qualified independent arbitrator of Global's choosing" and does not otherwise provide for any input from Plaintiffs on the selection of an arbitrator.  The unilateral right to select an arbitrator clearly favors Global.  To resolve whether it does so *unfairly*, however, the Court must assess the effect of this unfavorable term on Plaintiffs, which is a matter of proof on the record. *Motsinger*, 211 Or. App. at 623-26 ("We conclude that an approach that focuses on the one-sided *effect* of an arbitration clause—rather than on its one-sided *application*—to evaluate substantive unconscionability is most consistent with the common law in Oregon . . . and with state and federal policies regarding arbitration.")(emphasis in original).  In other words, the fact that a unilateral provision favors one party to an arbitration agreement is not singularly sufficient under Oregon law to render the provision unconscionable.

As proof that the provision unfairly favors Global, Plaintiffs contend the phrase "qualified independent arbitrator"

is so vague as to permit Global to pick any person to serve as
arbitrator.  The Court declines to conclude the phrase is
meaningless and notes the modifiers "qualified" and "independent"
set a bar that may be objectively applied to eliminate Global's
selection of, as Plaintiffs state, "anyone [Global] chooses."  In
any event, Plaintiff's argument is premature and speculative at
this point and, therefore, is not an appropriate basis for
determining any unfair effect of an arbitration provision.  *Id.*
at 618-19 (court refused to find an arbitration provision
unconscionable based on speculation as to the costs the
plaintiffs might bear).  The Court may not speculate as to
whether Global would select an unqualified or biased arbitrator
and, even if Global made a selection with which Plaintiffs
disagreed, whether Plaintiffs would have reasonable recourse for
breach of their agreement with Global.

   Accordingly, the Court concludes on this record that
the arbitration clause is not unconscionable with respect to
Global's unilateral right to select an arbitrator.

   **3.    Costs of Arbitration.**

   Plaintiffs also argue the costs of the arbitration may
be so significant as to prevent Plaintiffs from vindicating their
rights in the arbitral forum.  In *Motsinger* the Oregon Court of
Appeals analyzed the following factors to determine whether a
cost-sharing provision in an arbitration clause denied a

34 - OPINION AND ORDER

plaintiff vindication of her rights and, therefore, was
unconscionable:

> (1) [W]hether plaintiff will bear any
> costs at all in the arbitration, (2) if
> so, what those costs would be, and
> (3) what deterrent effect, if any, those
> potential costs would have on
> plaintiff's ability to bring an action
> to vindicate her rights.

211 Or. App. at 618.

Oregon courts "will not invalidate [an] arbitration
clause simply because of the possibility that plaintiff, if she
were to lose, would bear some undetermined costs of arbitration."
*Motsinger*, 211 Or. App. at 618.  *See also Vasquez-Lopez*, 210 Or.
App. at 574 (an arbitration clause is not rendered substantively
unconscionable because of the mere possibility that the plaintiff
would have to bear a prohibitive amount of costs).  "Denial of
access to an arbitral forum occurs when the cost of arbitration
is large in absolute terms, but also, comparatively, when that
cost is significantly larger than the cost of a trial."  *Vasquez-
Lopez*, 210 Or. App. at 574.  In addition, the party who asserts
an arbitration clause is invalid on the ground that a cost-
sharing provision renders the arbitration clause unconscionable
bears the burden of showing the likelihood of incurring such
costs.  *Motsinger*, 211 Or. App. at 617-18.

The Global Agreement does not set out the basis for
allocating costs of the arbitration.  Here the Court cannot

35 - OPINION AND ORDER

determine whether Plaintiffs would actually bear any costs of the arbitration, and, thus, the Court cannot declare the arbitration clause unconscionable under Oregon law on the basis of such speculation.  *Id*. at 618-19.

Accordingly, the Court concludes on this record that the arbitration clause is not unconscionable on the basis of any costs of arbitration Plaintiffs may bear.

### 4.   Limitations on Damages and Remedies.

As noted, he Global Agreement also contains the following "Limitation of Liability" clause:

> Under no circumstances shall Global of the Bank ever be liable for any special, incidental, consequential, exemplary or punitive damages.  IN NO EVENT SHALL THE LIABILITY OF GLOBAL OR THE BANK UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES YOU HAVE PAID UNDER THIS AGREEMENT.

Both parties give this argument scant attention in their memoranda.  Plaintiffs maintain this provision is unreasonably one-sided and is contrary to public policy because it limits the availability of their statutory right to punitive damages under CROA and the Oregon UTPA.  *See* 15 U.S.C. § 1679g(a)(2); Or. Rev. Stat. § 646.638.  Global, in turn, contends parties are free to limit remedies and damages contractually as the parties have done here, and, in any event, the Court is free to sever the Limitation of Liability in accordance with the terms of the Global Agreement (which provide for severance of any

unenforceable terms).

        In their Complaint Plaintiffs have pled a plausible
basis for an award of punitive damages under both the federal
CROA and the Oregon UTPA.  It is clear from the context of both
statutes that punitive-damage awards are an important part of
their enforcement in light of the routinely small amounts of
actual damages at issue.  *See* Or. Rev. Stat. § 646.638 (provides
for "actual damages or statutory damages of $200, whichever is
greater"); 15 U.S.C. § 1679g (provides for actual damages or
damages in the amount paid to the credit-repair organization).
Without the availability of punitive damages, the most
significant deterrent effect of these laws is lost.  *See Graham
Oil Co. v. ARCO Prod., Co., A Div. of Atlantic Richfield Co.*, 43
F.3d 1244, 1247-48 (9th Cir. 1994)(arbitration clause's
limitation on statutorily-provided punitive damages remedy that
was "important to the effectuation" of the statute was
unconscionable as against public policy).  *See also Htay Htay
Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App.
4th 704, 712 (2011)("A damages limitation may be unconscionable
if it contravenes public policy by limiting remedies available in
the statute under which a plaintiff proceeds . . . .").

        On this record, the Court concludes the Limitation of
Liability provision in the Global Agreement unreasonably favors
Global because it is a unilateral limitation on liability that is

37 - OPINION AND ORDER

against public policy.  Accordingly, the Court finds the portions
of the provision that limits Global's liability with respect to
punitive damages are unenforceable.

Thus, the Court has concluded two aspects of the Global
Agreement are unenforceable:  the requirement that the
arbitration take place in Tulsa, Oklahoma, and the limitation on
Global's liability for punitive damages.  In the exercise of its
discretion, the Court concludes severance of these two provisions
of the arbitration clause is sufficient to cure the unfairness
discussed herein.  If a trial on the merits of the formation
issue results in a finding against Plaintiffs' contentions, the
Court, in the exercise of its discretion, would compel the
parties to arbitrate Plaintiffs' claims in accordance with the
remaining terms of the Global Agreement.  *See Vasquez-Lopez*, 210
Or. App. at 576-77 (it is within the trial court's discretion to
sever the unconscionable provisions of the arbitration clause to
cure the unfairness to plaintiff).

In summary, assuming Plaintiffs have formed agreements to
arbitrate with Defendants, the Court concludes those agreements
are enforceable with the following modifications:

(1) The Court severs as unenforceable the forum-selection
clauses in the Nationwide Service Agreement and the Global
agreement and replaces them with the requirement that arbitration
occur within the District of Oregon, and

38 - OPINION AND ORDER

(2) The Court strikes as unenforceable the portions of the Limitation of Liability provision in the Global Agreement that preclude recovery for punitive damages and that limit Global's liability to the amount of fees that Plaintiffs paid to Global.

## CONCLUSION

For the reasons that follow, the Court **GRANTS in part** Defendants' Motions (#22, #31) to Compel Arbitration to the extent that the Court concludes these arbitration agreements are enforceable with the following modifications:

(1) The Court severs as unenforceable the forum-selection clauses in the Nationwide Service Agreement and the Global Agreement and replaces them with the requirement that arbitration occur within the District of Oregon; and

(2) The Court strikes as unenforceable the portions of the Limitation of Liability provision in the Global Agreement that preclude recovery for punitive damages and that limit Global's liability to the amount of fees that Plaintiffs paid to Global.

IT IS SO ORDERED.

DATED this 30th day of March, 2012.

ANNA J. BROWN
United States District Judge