IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TINA WILLIS and GARY WILLIS,                    3-11-CV-430-BR

          Plaintiff,                              VERDICT
                                         FINDINGS OF FACT
                                               AND
v.                                       CONCLUSIONS OF LAW

DEBT CARE USA, INC.;
NATIONWIDE DEBT SETTLEMENT
GROUP, LLC; and GLOBAL
CLIENT SOLUTIONS, LLC,

          Defendants.


STEVE D. LARSON
JOSHUA L. ROSS
NADINE A. GARTNER
Stoll Stoll Berne Lokting & Lachter P.C.
209 S.W. Oak St., Ste 500
Portland, OR 97204
(503) 227-1600

        Attorneys for Plaintiffs



GEORGE J. COOPER, III
Dunn Carney Allen Higgins & Tongue
851 S.W. Sixth Ave., Ste 1500
Portland, OR 97204
(503) 224-6440


1  - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

**RICHARD W. EPSTEIN**
**REBECCA F. BRATTER**
Greenspoon Marder, P.A.
200 East Broward Blvd., Ste 1500
Fort Lauderdale, FL 33301
(954) 491-1120

       Attorneys for Defendants Global Client Solutions LLC
       and Nationwide Debt Settlement Group

**ROBERT B. MILLER**
Kilmer Voorhees & Laurick, PC
732 N.W. 19th Avenue
Portland, OR 97209

**GEORGE J. COOPER III**
Dunn Carney Allen Higgins & Tongue
851 S.W. Sixth Ave., Ste 1500
Portland, OR 97204
(503) 224-6440

       Attorneys for Defendant Debt Care USA, Inc.


**BROWN, Judge.**

    This matter is before the Court for a "summary trial" to the Court on one issue:  Whether Plaintiffs Tina Willis and Gary Willis agreed to arbitrate their claims against Defendant Global Client Solutions, LLC.

    The parties stipulate the Court shall (1) determine whether there are questions of both fact and law or only questions of law as to the existence of an agreement to arbitrate Plaintiffs' claims and (2) resolve such questions of law and act as finder of fact if necessary.  *See* Stipulation Regarding Summary Trial Procedures (#120).


2  - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

**BACKGROUND**

Plaintiffs allege Defendants violated Oregon's Credit Repair Organizations Act, Oregon Revised Statute § 697.602, *et seq.*; Unlawful Trade Practices Act, Oregon Revised Statute § 646.605, *et seq.*; and 15 U.S.C. §§ 1679-1679j relating to the federal regulation of Credit Repair Organizations.  Plaintiffs filed this action as a class action, but a class has not been certified as of this date.

On March 30, 2012, the Court granted in part Global's Motion (#31) to Compel Arbitration conditioned on whether the Court finds an agreement to arbitrate Plaintiffs' claim exists.  In addition, the Court found Plaintiffs may recover punitive damages if justified, and Global's liability for other damages is not limited to the fees paid by Plaintiffs to Global if they prevail at arbitration.

The Court, therefore, turns to the sole remaining issue: Whether Plaintiffs agreed to the arbitration terms that the Court has already found to be enforceable.


**AGREED FACTS**[1]

As of January 19, 2010, Plaintiffs had incurred unsecured

---

[1] Although the parties jointly prepared the "Stipulated Facts" in the Pretrial Order, Defendant Global separately listed "Undisputed Facts" because Plaintiffs objected to their characterization as "Stipulated Facts."

credit-card debt totaling $96,652.50.

On January 19, 2010, Plaintiffs electronically signed and returned the following documents sent to them by Nationwide Debt Settlement Group:  Global's Special Purpose Account Application (SPAA); Nationwide's Debt Negotiation Program Service Agreement (DNPSA); and Payment of Fees to Nationwide Debt Settlement Group. In the SPAA Plaintiffs authorized Global to open a special purpose account on Plaintiffs' behalf.  Plaintiffs, however, did not thoroughly read the SPAA before signing it.

Paragraph 8 of Nationwide's DNPSA provides in relevant part:

> [Tina Willis and Gary Willis] agree that any claim or dispute by either Client or Nationwide Debt Settlement Group against the other, or against employees, agents, officers, of the other arising from or relating in any way to this Agreement, shall be resolved by binding arbitration.

The first paragraph of Global's SPAA provides in part:

> I understand that the Special Purpose Account's features, terms, conditions and rules are further described in an Account Agreement and Disclosure Statement that accompanies this Application (the Agreement').  *I acknowledge that I have received a copy of the Agreement; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by all of its terms and conditions.*

(Underlined emphasis added; italicized emphasis in original).

Notwithstanding the italicized language, the Account Agreement

4  - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

Disclosure Statement (AADS) had not, in fact, been received by Plaintiffs.  Instead, approximately one week later on either January 26, 2010, or January 27, 2010, Global mailed the AADS that was referred to in the SPAA to Plaintiffs.  The AADS contains the following arbitration provision:

> **Arbitration and Application of Law:**
>
> In the event of a dispute or claim relating in any way to this Agreement or our services, you agree that such dispute shall be resolved by binding arbitration in Tulsa Oklahoma utilizing a qualified independent arbitrator of Global's choosing.  The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.

PTO, Ex. B at 4.

Thereafter, between February 5, 2010, and November 5, 2010, Plaintiffs deposited ten monthly payments in the amount of $1,157.33 each into the Special Purpose Account to be used by Global to reduce Plaintiffs' credit-card debt.

## DEFENDANTS' REQUEST FOR JUDICIAL NOTICE (#124)

Pursuant to Federal Rule of Evidence 201(c)(2), Defendants request the Court to take judicial notice of the pleadings and other relevant materials filed in the Oregon Court of Appeals in *Citibank South Dakota, N.A., v. Santoro,* 210 Or. App. 344, 349 (2006).  Because Plaintiffs have not filed any opposition to Defendants' Motion, and it otherwise appears to be in order, the

5  - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

Court **GRANTS** Defendants' Motion and takes judicial notice of the materials.

## FINDINGS OF FACT

After reviewing and weighing the record, documents, transcripts of deposition testimony attached to the Pretrial Order (PTO), and the parties' respective memoranda filed in this summary proceeding, the Court finds the following facts by a preponderance of the evidence:

1.   Neither the SPAA signed by Plaintiffs on January 19, 2010, nor any documents accompanying the SPAA on that date refer to arbitration.

2.   Contrary to the recitation in the SPAA, the AADS, which contains the arbitration provision at issue in this matter, did not accompany the SPAA that was mailed to and ultimately signed by Plaintiffs.  PTO, ¶ I (2).

3.   On January 21, 2010, Global electronically validated the information that Plaintiffs provided in the SPAA and started processing transactions relating to Plaintiff's credit-card balances.  Pls.' Supplemental Mem., Ex. D, Parsons Dep. at 142, 145.

4.   Plaintiffs did not receive the AADS, which included the contract language pertaining to the disputed arbitration

provision, until on or about January 27, 2010.  Pls.' Supp. Mem., Ex. D, Parsons Dep. at 126.  Until that date, Plaintiffs did not have actual knowledge about the existence of an arbitration pertaining to their contractual arrangement with Defendants.

5.  There is not any signature line on the AADS or Global's "Welcome Letter" for Plaintiffs' to acknowledge receipt of those documents nor is there any provision in the AADS incorporating the terms of the AADS into the SPAA.  PTO, Ex. B.

6.  The AADS, however, specifically provides its terms, conditions, and disclosures apply to the Special Purpose Account that Plaintiffs established with Global.  *Id.*  PTO, Ex. B at 3.

7.  Plaintiffs did not read the AADS.  Willis Dep., 82:11-13.

8.  Global did not follow up with Plaintiffs to determine whether Plaintiffs ever received the AADS.  Pls.' Supplemental Mem., Ex. D (Parsons Dep. at 150).

9.  Nevertheless, after January 27, 2010, Plaintiffs were on notice of the existence of the arbitration provision pertaining to any disputes they may have had with Global regarding Global's performance under the SPAA and AADS, and, as noted, Plaintiffs thereafter made ten monthly payments in the Special Purpose Account until November 5, 2010.

## CONCLUSIONS OF LAW

As the parties note, the Court must determine whether the above facts establish as a matter of Oregon law that the parties agreed to arbitrate their dispute in this matter; *i.e.,* (1) whether there was an actual meeting of minds among the parties as to arbitration; (2) whether, in any event, the arbitration provision in the AADS was incorporated by reference into the SPAA; and, if not, (3) whether Global is an intended beneficiary of the arbitration provision in the DPNSA between Plaintiffs and Nationwide (*See* Opin. and Order, issued March 30, 2012, in which the Court concluded the arbitration provision in the AADS is enforceable except to the extent it precludes recovery of punitive damages and/or limits Global's liability to the amount of fees that Plaintiff paid to Global).

**I.   The Parties' Intent/Meeting of the Minds.**

The parties disagree as to whether there was any meeting of the minds or manifestation of intent by the parties to arbitrate any dispute over the SPAA and AADS.

**A.   Standards.**

Whether a contract exists is a question of law for the court. *Dalton v. Robert Jahn Corp.*, 209 Or. App. 120, 132 (2006)(quotation omitted). A "valid contract exists only when there is a meeting of the minds and where all [essential] terms

8  - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

are either agreed upon or there is a method agreed upon by which open and disputed terms can be settled, such that nothing is left for future negotiation." *Id.* (citation omitted).

"'Oregon subscribes to the objective theory of contracts. In determining whether a contract exists and what its terms are, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts.'" *Id.* (*quoting Ken Hood Constr. v. Pac. Coast Constr.*, 201 Or. App. 568, 578 (2005)). "'[W]hether parties enter into a contract does not depend on their uncommunicated subjective understanding; rather, it depends on whether the parties manifest assent to the same express terms.'" *Id.* (quoting *Newton/Boldt v. Newton*, 192 Or. App. 386, 392 (2004)). *See also Citibank South Dakota N.A. v. Santoro,* 210 Or. App. 344, 349 (2006), S. Ct. *rev. den.* 342 Or. 473 (2007)(A party who receives a credit card in the mail at his request, does not cancel the credit card, and uses the credit card is deemed by his conduct to have accepted the contract terms associated with the use of the credit card).

**B. Conclusion of Law.**

The Court concludes when Plaintiffs received the AADS on January 27, 2010, and thereafter continued to perform consistently with the terms of the SPAA and the AADS by continuing to use the services provided to them by Global in

accordance with the provisions of the SPAA (which Plaintiffs signed) and the AADS (which Plaintiffs did not sign), Plaintiffs objectively manifested their intent to abide by such terms, including the requirement that any disputes under those agreements be arbitrated.  *See Santoro,* 210 Or. App. at 349.

## II.  Incorporation by Reference of AADS Arbitration Provision in SPAA.

In any event, according to Defendants, the arbitration provision in the AADS was incorporated by reference into the SPAA based on the language in the SPAA that the AADS "accompanied" the SPAA.  Plaintiffs, however, assert the AADS and its accompanying arbitration provision was not and could not be incorporated by reference into the SPAA because Plaintiffs did not receive the AADS with its arbitration provision until a week after the parties' agreement was in effect.

### A.  Standards.

When a written instrument refers in specific terms to another writing, the other writing is a part of the contract. *Northwestern Pac. Indem. Co. v. Junction City Water Control Dist.,* 295 Or. 553, 558 (1983)(citing *Cerino v. Oregon Physicians' Serv.*, 202 Or. 474 (1954)).  The Court is not aware of any authority to the contrary when the other writing is not simultaneously delivered, but instead is presented at a later time before the parties perform under the contract.

10 - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

**B.  Conclusion of Law**.

The Court concludes no later than January 27, 2010, the date
Plaintiffs acknowledge they received the AADS, the terms of the
AADS were incorporated by reference into the SPAA, and Plaintiffs
accepted the terms of the AADS, including its arbitration
provision, by continuing to use thereafter the services provided
for in the SPAA and the AADS.  The fact that Plaintiffs may not
have read those terms is not material to their enforceability
under Oregon law.  *See Santoro,* 210 Or. App. at 349.

## III. Global as Intended Third-Party Beneficiary of Nationwide's Arbitration Provision.

In light of the Court's conclusion that Plaintiffs are bound
by the arbitration provision in the AADS, the Court does not
reach the issue as to whether Global was an intended third-party
beneficiary of the arbitration provision in the agreement between
Plaintiffs and Nationwide.


## VERDICT

For these reasons, and to conclude this summary trial, the
Court **FINDS** in favor of Defendants and **CONCLUDES** Plaintiffs'
claims in this matter are subject to the arbitration terms the
Court has already found to be enforceable.

Accordingly, the Court directs the parties to confer and to
submit jointly no later than December 3, 2012, any necessary

11 - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW

closing orders for referral of this matter in its entirety to arbitration.

IT IS SO ORDERED.

DATED this 19th day of November, 2012.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

12 - VERDICT, FINDINGS OF FACT, and CONCLUSIONS OF LAW